

**SIGNED this 23rd day of March, 2012**

_____
Marcia Phillips Parsons
**UNITED STATES BANKRUPTCY JUDGE**

_____

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| In re<br><br>APPALACHIAN OIL COMPANY, INC.,<br><br>　　　　Debtor. | No. 09-50259<br>Chapter 11 |
| APPALACHIAN OIL COMPANY, INC.,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>VIRGINIA STATE LOTTERY DEPARTMENT,<br><br>　　　　Defendant. | Adv. Pro. No. 10-5064 |

# MEMORANDUM

APPEARANCES:

　　Mark S. Dessauer, Esq.　　　　　　　Amy K. Dilworth, Esq.
　　Hunter, Smith & Davis　　　　　　　　Virginia Attorney General's Office
　　Post Office Box 3740　　　　　　　　900 East Main Street
　　Kingsport, Tennessee 37664　　　　　Richmond, Virginia 23219
　　*Attorney for Plaintiff*　　　　　　　　　*Attorney for Defendant*

**Marcia Phillips Parsons, United States Bankruptcy Judge**. This is an action pursuant to 11 U.S.C. §§ 547(b) and 550(a) to avoid and recover certain alleged preferential transfers totaling $485,227.57 made by the debtor Appalachian Oil Company, Inc. ("APPCO") to the Virginia State Lottery Department ("Virginia Lottery"). Presently before the court is the Virginia Lottery's motion for summary judgment based on its contention that the transfers constituted trust funds and therefore were not property of the debtor, a necessary element of § 547(b). APPCO opposes the motion and contends, to the contrary, that it is entitled to partial summary judgment on its claim that the transfers were property of the debtor. As discussed hereafter, both motions will be granted in part and denied in part. This is a core proceeding. *See* 28 U.S.C. § 157(b)(2)(F).

I.

On February 9, 2009, APPCO filed a voluntary petition for bankruptcy relief under chapter 11, and thereafter on August 9, 2010, initiated this adversary proceeding. The following pertinent facts, taken from the complaint, the answer, and the parties' statements of undisputed material facts filed in connection with the summary judgment motions, are not in dispute.

At the time of its bankruptcy filing, APPCO operated approximately 57 convenience stores in Tennessee, Virginia, and Kentucky. At these stores, APPCO regularly sold to the public petroleum products, groceries, cigarettes, other miscellaneous items, and lottery tickets issued by the particular state in which the store was located. Consequently, in its Virginia stores, APPCO sold lottery tickets issued by the Commonwealth of Virginia. Under Virginia law, APPCO was required to maintain a separate bank trust account that was to be used exclusively for its Virginia lottery business. *See* 11 Va. Admin. Code § 5-31-60A. It was contemplated that Virginia Lottery would collect payment on a weekly basis by issuing each Wednesday an invoice to APPCO for amounts due that week for the lottery tickets sold online and for activated tickets held more than 21 days. Then, in payment of these amounts, Virginia Lottery would each Thursday sweep by electronic funds transfer ("EFT") the trust account APPCO had set up for the benefit of Virginia Lottery.

Unbeknownst to Virginia Lottery, APPCO failed to set up a trust account exclusively for the Virginia Lottery. To the contrary, the only trust account that APPCO set up was a trust account for the Tennessee lottery at Branch Banking and Trust ("BB&T"), account no. 930, in the name of

2

"Appalachian Oil Company, Inc. in trust for the TN Education Lottery Corporation." Moreover, APPCO did not segregate the proceeds received from the sale of Virginia lottery tickets from its other revenues. Rather, APPCO's standard practice for all of its stores was that each night each store would deposit all of its cash receipts, including proceeds from the sale of lottery tickets, into a local general bank account, or with some stores, into one of APPCO's general bank accounts at BB&T. Then every day or every other day, deposits from all of the local accounts were swept by BB&T into APPCO's master account at BB&T, account no. 957. From this master account, APPCO regularly paid its vendors and creditors.

With respect to payment to Virginia Lottery of the amount due it each week, Virginia Lottery conducted EFT sweeps of APPCO's Tennessee Lottery trust account.[1] This account was set up as a zero balance account, such that no funds were maintained in the account. Instead, the trust account kept a zero balance until an EFT draft was made on the account, at which point funds would be automatically pulled from APPCO's master account to satisfy the sweep, provided there were sufficient funds in the master account. The evidence indicated that APPCO used the Tennessee Lottery trust account not only for its electronic payments to the Virginia Lottery, but also to make electronic payments to the Tennessee and Kentucky state lotteries.

During the 90 days prior to APPCO's bankruptcy filing, beginning November 13, 2008, Virginia Lottery made eight weekly, successful EFT sweeps of APPCO's trust account in order to receive payment of that week's invoice, with these eight sweeps totaling $271,987.53. Subsequently, on January 8, 2009, an attempted sweep by Virginia Lottery in the amount of $33,303.34 was returned because of insufficient funds. In order to make up the insufficiency, APPCO wired a payment in this same amount to Virginia Lottery on January 12, 2009. Thereafter,

---

[1] There is no suggestion in the record that Virginia Lottery knew that APPCO had failed to set up a Virginia Lottery trust account, or that it knew the account it was sweeping was the Tennessee Lottery trust account. To the contrary, the bank authorization agreement that APPCO executed in order to authorize Virginia Lottery to conduct the EFT sweep identified the account as "Appalachian Oil Company Inc. Virginia Lottery Trust," and a bank representative of BB&T verified that the account was titled as "(Retailer-Business name)/ Virginia Lottery Trust." How this "error" came about has not been addressed by the parties.

on January 14, 21, 28, and February 5, 2009, APPCO wired four weekly payments to Virginia Lottery in payment of that particular week's invoice. The five wired payments totaling $213,182.79 made by APPCO to Virginia Lottery were from a general bank account of APPCO's at BB&T, account no. 353, rather than the trust account from which the other payments had been made. In this adversary proceeding, APPCO seeks to avoid and recover as preferential transfers pursuant to §§ 547 and 550 of the Bankruptcy Code all thirteen payments made by APPCO to Virginia Lottery during the 90 days preceding the bankruptcy filing, which payments collectively total $485,170.32.

In its motion for summary judgment, Virginia Lottery asserts that the proceeds collected by APPCO from the sale of Virginia lottery tickets were not property of APPCO but were instead trust funds held for the benefit of Virginia Lottery, such that the payments by APPCO to Virginia Lottery are not subject to avoidance as preferences. In response, APPCO asserts that no express trust was created under Virginia law. Alternatively, APPCO maintains that even if a trust were created, Virginia Lottery's ability to exclude the transfers from property of the debtor is conditioned upon the ability to trace the trust funds to the transfers, which Virginia Lottery has failed to do. Further, APPCO argues that the proceeds from the sale of Virginia lottery tickets lost their identity as trust funds and became property of the debtor because APPCO commingled the proceeds with its other funds. Based on these arguments, APPCO seeks denial of the Virginia Lottery's summary judgment motion and requests partial summary judgment in its favor on the issue of whether the alleged preferential payments were payments of APPCO.

II.

Rule 56(a) of the Federal Rules of Civil Procedure, applicable in adversary proceedings by virtue of Rule 7056 of the Federal Rules of Bankruptcy Procedure, states in part that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." When deciding a motion for summary judgment, the court does not weigh the evidence to determine the truth of the matter asserted but simply determines whether a genuine issue for trial exists. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S. Ct. 2505 (1986). The moving party bears the burden of proving that, based upon the record presented to the court, there is no genuine dispute concerning any material

facts. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548 (1986); *Owens Corning v. Nat'l Union Fire Ins. Co.*, 257 F.3d 484, 491 (6th Cir. 2001). The burden then shifts to the nonmoving party to come forward with specific facts showing a genuine issue for trial. *Merriweather v. Zamora*, 569 F.3d 307, 313 (6th Cir. 2009). Reliance solely on allegations or denials contained in the pleadings or a "mere scintilla of evidence in support of the nonmoving party will not be sufficient." *Nye v. CSX Transp., Inc.*, 437 F.3d 556, 563 (6th Cir. 2006); *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87, 106 S. Ct. 1348 (1986). The facts and all resulting inferences are viewed in a light most favorable to the nonmovant, and the court decides whether "the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52. Nevertheless, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 474 U.S. at 587 (citations omitted).

III.

Subject to certain inapplicable limitations, § 1107(a) of the Bankruptcy Code permits a chapter 11 debtor in possession such as APPCO to exercise the rights of a bankruptcy trustee under the Code. *See* 11 U.S.C. § 1107(a). These rights include the ability of a trustee under § 547(b) to avoid a transfer of an interest of the debtor:

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

    (A) on or within 90 days before the date of the filing of the petition; or

    (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and

(5) that enables such creditor to receive more than such creditor would receive if—

    (A) the case were a case under chapter 7 of this title;

    (B) the transfer had not been made; and

5

> (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C. § 547(b). As set forth in the prefatory clause of § 547(b), to be subject to avoidance, the transfer must be a transfer of property of the debtor.

As previously noted, the sole question which forms the basis of both Virginia Lottery's motion for summary judgment and APPCO's responsive motion for partial summary judgment is whether the transfers in question were transfers of the debtor's property. With respect to this phrase, the Bankruptcy Appellate Panel for the Sixth Circuit has stated the following:

> Although the Bankruptcy Code does not define "property of the debtor," the Supreme Court has found that the term is "best understood as that property that would have been part of the estate had it not been transferred [by the debtor] before the commencement of bankruptcy proceedings." *Begier v. IRS*, 496 U.S. 53, 58, 110 S. Ct. 2258, 2263 (1990). "In defining 'an interest of the debtor in property' the Sixth Circuit looks to 11 U.S.C. § 541(a)(1), which provides that the property of the estate includes 'all legal or equitable interests of the debtor in property as of the commencement of the case.'" *Spradlin v. Jarvis ( In re Tri-City Turf Club, Inc.)*, 323 F.3d 439, 443 (6th Cir. 2003) (citing *Stevenson v. J.C. Bradford & Co. (In re Cannon)*, 277 F.3d 838, 849 (6th Cir. 2002)). In addition, in the absence of controlling federal bankruptcy law, the substantive nature of the debtor's property interest is defined by state law. *Id.* (citing *In re Cannon*, 277 F.3d at 849; *Jenkins v. Chase Home Mortgage Corp. (In re Maple Mortgage, Inc.)*, 81 F.3d 592, 596 (5th Cir.1996)).
>
> Moreover, pursuant to 11 U.S.C. § 541(d), "property of the estate" includes all property to which the debtor holds legal title, except "to the extent of any equitable interest in such property that the debtor does not hold." "Because the debtor does not own an equitable interest in property he holds in trust for another, that interest is not 'property of the estate.' Nor is such an equitable interest 'property of the debtor' for purposes of § 547(b)." *Poss v. Morris (In re Morris)*, 260 F.3d 654, 670 (6th Cir. 2001) (quoting *Begier*, 496 U.S. at 59, 110 S. Ct. at 2258).

*Meoli v. Kendall Elec., Inc. (In re R.W. Leet Elec., Inc.)*, 372 B.R. 846, 852-853 (B.A.P. 6th Cir. 2007).

In the present case, Virginia Lottery asserts that Virginia law creates a statutory trust in the proceeds from the sale of lottery tickets, such that APPCO held the proceeds in trust and they were not property of the debtor for purposes of § 547(b). In support of this assertion, the Virginia Lottery cites Va. Code Ann. § 58.1-4021.F, which states in pertinent part, "All proceeds from the sale of

6

lottery tickets or shares received by a person in the capacity of a sales agent shall constitute a trust fund until deposited into the State Lottery Fund either directly or through the Department's authorized collection representative." Virginia Lottery also references *George v. Virginia*, 667 S.E.2d 779 (Va. 2008), wherein the Supreme Court of Virginia recognized that a statute requiring an employer to withhold funds from its employees' wages to satisfy state income taxes and specifying that the withheld funds would be held "in trust" created a statutory trust such that the withheld funds were not property of the employer. Lastly, in this regard, Virginia Lottery cites the aforementioned Virginia regulation that requires each retailer to maintain a separate bank account to be used exclusively for lottery business and styled in the name of the retailer followed by the words "Virginia Lottery Trust." *See* 11 Va. Admin. Code § 5-31-60A.

The Virginia Lottery acknowledges that APPCO failed to comply with this regulation and failed to set up a trust account exclusively for the Virginia Lottery. Virginia Lottery maintains that, nonetheless, a trust was created in the proceeds from the sale of Virginia Lottery tickets and they retained their trust status even though APPCO commingled them with non-trust funds, citing *Begier v. Internal Revenue Service*, 496 U.S. 53, 110 S. Ct. 2258 (1990). *Begier* involved a statutory trust imposed by 26 U.S.C. § 7501 in certain withheld or collected income taxes. The Supreme Court concluded in *Begier* that a trust was created when the taxes were collected or withheld, despite the employer's failure to place the collected and withheld taxes in a segregated account. *Id.* at 60.

In response, APPCO maintains that no express trust was created and denies that a fiduciary relationship existed between the parties under Virginia law. According to APPCO, an express trust must be created by an agreement between the parties that sets forth the intention to create a trust and imposes trust-like duties. APPCO acknowledges that the parties have a written agreement, a Retailer Contract dated December 7, 1999, but states that it does not provide by its terms for the creation of a trust or impose any trust-like duties. APPCO also argues that no express trust was created because APPCO failed to set up a Virginia Lottery trust account as required by the Virginia regulation, commingled the alleged trust funds with non-trust funds, and paid the Virginia Lottery from a trust account held in trust for the Tennessee Lottery and from a non-trust account. Lastly, APPCO cites three lottery cases from other jurisdictions where the courts in the context of § 523(a)(4) nondischargeability determinations concluded that no express or technical trust had been

7

created. *See Tex. Lottery Comm'n. v. Tran (In re Tran)*, 151 F.3d 339, 345 (5th Cir. 1998) (notwithstanding statute purporting to create a trust in lottery proceeds, no fiduciary relationship within meaning of § 523(a)(4) was established because there was no segregation requirement and no prohibition on using lottery proceeds for non-lottery purposes); *Ill. Dept. of Lottery v. Marchiando (In re Marchiando)*, 13 F.3d 1111, 1113 (7th Cir. 1994) (even though statute provided that proceeds from sale of lottery tickets constituted a trust and prohibited commingling of these proceeds with other funds, a § 523(a)(4) fiduciary relationship did not exist because no trust-like duties were imposed on debtor); *N.C. Lottery Comm'n v. Wells (In re Wells)*, 431 B.R. 379, 387 (Bankr. E.D.N.C. 2009) (no express or technical trust created for § 523(a)(4) purposes because contract did not require debtor to maintain or establish separate trust account, lottery forms contemplated that payment would be made from debtor's business account and therefore commingling was foreseeable, and payment of lottery tickets was due at certain specified time, regardless of whether tickets had been sold).

As may be evident, the parties' arguments are somewhat mismatched. Virginia Lottery's position is that a *statutory* trust exists in the lottery proceeds, while APPCO's response is that no *express* trust was created. However, it is not necessary for Virginia Lottery to establish that an express trust was created in order to exclude the lottery proceeds from property of the debtor. The Sixth Circuit Court of Appeals has expressly recognized that "[s]tatutory trust funds are not property of the debtor and are not subject to the . . . (§ 547) provisions of the new [Bankruptcy] Act." *Selby v. Ford Motor Co.*, 590 F.2d 642, 649 (6th Cir. 1979); *see also Poss v. Morris (In re Morris)*, 260 F.3d 654, 669 (6th Cir. 2001) (concluding that property held in a constructive trust is also excluded from the scope of property of the estate under the Bankruptcy Code). The context for the court of appeals' ruling in *Selby* was the Michigan Builders Trust Fund Act, which created a trust in construction funds for the benefit of subcontractors and materialmen. *Selby*, 590 F.2d at 649 (citing Mich. Comp. Laws Ann. § 570.151). The Sixth Circuit observed that the Supreme Court of Michigan had held that the beneficial interests of subcontractors and materialmen under this statute did not become property of the contractor or of his trustee in bankruptcy. *Id.* (citing *B.F. Farnell Co. v. Monahan*, 141 N.W.2d 58 (Mich. 1966)). Applying this state law principle to the case before it, the *Selby* court concluded that the debtor's prepetition payment of construction funds was not

subject to avoidance as a preference because the debtor had no interest in the funds under state law. *Id.*

In the present case, Va. Code Ann. § 58.1-4021.F purports to create a trust in proceeds from the sale of lottery tickets. Although no Virginia case defines a statutory trust or sets forth its required elements, the Virginia Supreme Court held in *George* that Va. Code Ann. § 58.1-474 creates a statutory trust by the language, "sums withheld in accordance with the provisions of this article shall be held in trust for the Commonwealth." *George v. Virginia*, 667 S.E.2d at 780. *George* involved an employer who had failed to remit to the Virginia Department of Taxation income taxes that he had withheld from his employees' wages. After his conviction for embezzling Commonwealth funds, the employer argued upon appeal that the withheld funds could not have been embezzled because they belonged to him rather than the Commonwealth. He noted that he had not segregated the withheld funds and that they had been held in his general bank account where they were mingled with the employer's other funds. According to the employer, he had a mere debtor/creditor relationship with the Commonwealth, which financially obligated him to remit the withheld funds to the Commonwealth at a future date, rather than a trust relationship. The Virginia Supreme Court rejected the argument and affirmed the conviction, concluding that once the funds were withheld, under Va. Code Ann. § 58.1-474 they were no longer property of the employer or of the employee. *Id.*

Applying *George* to the present case, this court concludes that Va. Code Ann. § 58.1-4021.F creates a statutory trust in proceeds from the sale of lottery tickets. As *George* implicitly holds, the fact that APPCO failed to segregate the trust funds from APPCO's other funds is irrelevant. *Id.; see also* 76 Am Jur 2d *Trusts* § 287 (2012) ("As a general rule, the commingling of trust funds with other funds does not destroy the identification of the trust funds."); *Carlisle Cashway, Inc. v. Johnson (In re Johnson)*, 691 F.2d 249, 252 (6th Cir. 1982) ("That the [Michigan Building Contract Fund Act] does not mandate any particular form or procedure in handling trust funds [does not] undercut[] the validity of the trust . . . ."); *cf. Begier*, 496 U.S. at 60-61 (because statute in question created trust in amount of tax collected or withheld, trust was created when taxes collected or withheld, notwithstanding employer's failure to segregate; to impose a segregation requirement would relegate creation of trust to "debtor's whim").

9

In this regard, any reliance by APPCO on the lottery cases that addressed whether express trusts had been established for purposes of § 523(a)(4) is misplaced. Those cases turn on the definition of an express or technical trust in the particular states in which the cases arose and the definition of a fiduciary for purposes of § 523(a)(4). *See Patel v. Shamrock Floorcovering Servs., Inc.*, 565 F.3d 963, 966 (6th Cir. 2009). As such, they are inapplicable to the issue of whether a trust was created under Virginia law, and if so, whether the trust property is excluded from the definition of property of the estate under § 541 of the Code. Based on all of the foregoing, the court holds that the proceeds from the sale of Virginia lottery tickets were held in trust for the benefit of the Commonwealth of Virginia and did not constitute property of APPCO.

This conclusion, however, does not necessarily resolve the question of whether the transfers to the Virginia Lottery were transfers of the trust funds, such that they are not subject to avoidance as preferences. The Supreme Court explained in *Begier* that the fact that a debtor held trust funds is insufficient to answer the question of whether the *particular dollars* that the debtor paid to the alleged preference creditor were trust funds or property of the debtor. *Begier*, 496 U.S. at 62 (emphasis in original). Only if the creditor was actually paid with the trust funds has there been no transfer of property of the debtor and therefore no preference. *Id.*

APPCO maintains that Virginia Lottery has failed to establish that it was paid with trust funds. According to APPCO, when it commingled the trust funds with APPCO's other funds in a non-trust account the trust funds lost their identity. Under this circumstance, contends APPCO, it is incumbent on Virginia lottery to trace the trust property, which it has failed to do. In support of this proposition, APPCO cites *First Federal of Michigan v. Barrow*, 878 F.2d 912 (6th Cir. 1989). As explained by the Sixth Circuit Court of Appeals in that decision:

> Once the trust relationship has been established, one claiming as a cestui que trust thereunder must identify the trust fund or property in the estate, and, if such fund or property has been mingled with the general property of the debtor, sufficiently trace the trust property. If the trust fund or property cannot be identified in its original or substituted form, the cestui becomes merely a general creditor of the estate.

*Id.* at 915 (quoting 4 *Collier on Bankruptcy* ¶ 541.13 (15th ed. 1988)).

However, a critical distinction between the facts in *First Federal* and those in the present

case is that the first eight alleged preferential payments made by APPCO to Virginia Lottery were made from a trust account rather than a general account of APPCO. As to these eight payments, the court believes that the Sixth Circuit's decision in *In re Cannon* is more instructive. *See Stevenson v. J.C. Bradford & Co. (In re Cannon)*, 277 F.3d 838 (6th Cir. 2002).

In *Cannon*, a Tennessee real estate attorney maintained several escrow accounts to hold clients funds in connection with the clients' real estate transactions. The attorney subsequently began using the funds in the escrow accounts to pay various personal and business expenses, and later made numerous transfers from the accounts to a brokerage company in order to engage in commodities trading. *Id*. at 844. Upon experiencing significant losses from this trading, the attorney filed for bankruptcy relief under chapter 7 (and was subsequently disbarred and imprisoned after pleading guilty to numerous federal crimes). *Id.* at 845. His bankruptcy trustee sought to recover the transfers from the brokerage company as fraudulent transfers under § 548 of the Bankruptcy Code. Although the bankruptcy court ruled in favor of the trustee, the district court reversed, concluding that the transfers were not property of the debtor attorney, a necessary element of § 548. *Id.* at 847. The court of appeals affirmed on the same basis. *Id.*

In reaching this conclusion, the court first recognized that the client escrow accounts were express trusts and the funds therein trust funds for which the debtor only possessed legal title with equitable title remaining vested in the clients. *Id.* at 850. The court observed that "[a]lthough Tennessee law generally treats claimants of an insolvent trust as general creditors rather than beneficiaries unless they trace their property among commingled funds," tracing was not necessary in the case before it because the alleged fraudulent transfers had been from the trust accounts. *Id.* at 850-51. And, while the debtor attorney had placed some of its personal funds into the trust accounts, thus commingling trust funds with non-trust monies, under common law trust principles these added personal funds were deemed to constitute trust funds because the debtor had made the deposits in order to repay some of the misappropriated funds. *Id.* at 851 (citing, *inter alia, Bogert's Trusts and Trustees* § 929 (2d ed. rev. 1984) (explaining that a trustee's later deposits of his own money into a trust account are presumed to be restitution for his stolen funds when the account is expressly labeled a trust account)). Consequently, the transfers to the defendant in *Cannon* from the trust account were not property of the debtor, subject to recovery as a fraudulent conveyance, even

though no tracing had been demonstrated. *Id.* at 851-52.

A similar result was reached in *Suwannee Swifty Stores, Inc. v. Georgia Lottery Corp. (In re Suwannee Swifty Stores, Inc.)*, 266 B.R. 544 (Bankr. M.D. Ga. 2001), under facts more closely aligned with those of the present case. In that decision, the debtor sought to avoid under 11 U.S.C. § 549(a) postpetition lottery payments to the Georgia Lottery Corporation. In response, the defendant argued that the payments were trust funds rather than estate property and therefore not avoidable. As in the present case, the debtor's routine business practice was to initially commingle all of its revenue, along with proceeds from lottery ticket sales, into a general account, even though Georgia law required retailers to deposit lottery proceeds in a separate trust account. Then, each week, the debtor would deposit into its trust account the amounts needed to satisfy the Georgia Lottery Corporation's weekly sweep. *Id.* at 547. It was these post-petition sweeps by Georgia Lottery Corporation out of the trust account that the debtor sought to avoid.

The bankruptcy court concluded that Georgia law created a statutory trust in favor of the Georgia Lottery Corporation in all proceeds from the sale of lottery tickets. *Id.* at 549 (citing Ga. Code Ann. § 50-27-21(a)). The court further concluded that it was unnecessary for the Georgia Lottery Corporation to perform any tracing to establish that it was actually paid with trust funds, citing, in part,[2] the common law presumption that a trustee is restoring a beneficiary's trust funds when it adds funds to a depleted trust account. *Id.* at 553 (citing *Bethlehem Steel Corp. v. Tidwell*, 66 B.R. 932, 942 (M.D. Ga. 1986)); *see also* Restatement (Second) of Trusts § 202, cmt. m (2011).

---

[2] The primary basis of the court's ruling was the *Begier* decision, with the bankruptcy court concluding that it stood for the proposition that a voluntary payment, "regardless of its source," is conclusively presumed to be from the trust corpus. *Id.* at 552. In reaching this conclusion, the *Suwannee Swifty Stores* court cited *Begier's* description of a § 7501 Internal Revenue Code trust, a trust created in an "abstract amount" without regard to the source of the funds, and concluded that the statutory trust in lottery proceeds was the same type of trust. *Id.* at 553 (citing *Begier*, 496 U.S. at 66-67).

This court respectfully disagrees with this aspect of the *Suwannee Swifty Stores* decision. Like the trust in the present case, the trust in *Suwannee Swifty Stores* was not in an abstract amount without regard to source; rather the trust was in specific property from a particular source, proceeds from the sale of lottery tickets. *See* Ga. Code Ann. § 50-27-21(a) ("All proceeds from the sale of the lottery tickets or shares shall constitute a trust fund until paid to the corporation . . .").

Applying *Cannon* and *Suwannee Swifty Stores*, along with the common law trust presumption applied therein, to the present case, the court concludes that the payments from the trust account to Virginia Lottery were payments of trust funds rather than funds of APPCO even though no tracing has been demonstrated. By setting up the trust account to pull monies from APPCO's master account when it was drawn upon by Virginia Lottery's weekly EFT, APPCO in essence created a systematic, electronic means of restoring the trust funds that it should have been segregating all along. This restoration of trust funds is conclusively presumed to be trust funds, as the *Cannon* decision directs, regardless of the source of these funds. Thus, tracing is not required. *See In re Cannon,* 277 F. 3d at 851-52; *see also Kupetz v. United States (In re Cal. Trade Technical Sch., Inc.*, 923 F. 2d 641, 647 (9th Cir. 1991) (restored funds in a trust account are not subject to the tracing requirement); *Flint Ink Corp. v. Calascibetta*, No. 06-2517, 2007 WL 2687415, *10-11 (D.N.J. Sept. 10, 2007) (transfer from segregated account which contained express trust funds not subject to avoidance as preference even though debtor had commingled personal funds in the account); *Watts v. Pride Utility Constr.* (*Matter of Sudco, Inc.*), No. 05-1134, 2007 WL 7143065, *7 (Bankr. N.D. Ga. Sept. 27, 2007) (recognizing presumption that replenished funds are trust funds when deposited into a segregated trust account). The court finds it irrelevant that the trust account from which Virginia Lottery was paid was established in trust for the Tennessee Lottery. Because the account was a zero balance account, funds flowed through the account only in response to an EFT sweep by a particular state lottery such that the funds were never commingled in the account. Moreover, to the extent the funds were commingled therein, the law remains that the funds in the account are presumed to be trust funds rather than funds of the debtor APPCO. As stated by the Sixth Circuit in *Cannon*, "the commingling of funds held in express trust in the escrow accounts does not alter their character, and these funds remain outside the estate . . . ." *In re Cannon*, 277 F.3d at 851. Because the first eight payments to Virginia Lottery were not property of the debtor APPCO, Virginia Lottery is entitled to summary judgment on APPCO's claim to recover these payments as preferential payments of property of the debtor.

With respect to the five payments that APPCO wired to Virginia Lottery from an APPCO general account, no common law presumption saves Virginia Lottery from the tracing requirement. This conclusion is unaltered by the fact that the general account from which Virginia Lottery was

13

paid may have included some of Virginia Lottery's trust funds. As explained by the Sixth Circuit in *First Federal*, if a defaulting fiduciary combines trust money with his own in a non-trust account, makes withdrawals from the account, but later adds his own funds into the account, the added funds are not presumed to constitute trust funds. Rather, the trust is deemed dissipated except as to the account's lowest intermediate balance, and the trust claimant may assert an interest only in funds in which it can perform the necessary tracing.[3]  *See First Fed. of Mich.*, 878 F.2d at 916 (quoting 4 *Collier on Bankruptcy* ¶ 541.13); Restatement (Second) of Trusts § 202 cmts. j and o (2011); Restatement (First) of Restitution § 59 and § 212 cmt. a (2011); *Bogert's Trusts and Trustees* § 929 (2011).

In response, Virginia Lottery maintains that it has no duty to trace, that it is sufficient that a trust was created. Alternatively, citing *Begier*, Virginia Lottery argues that the voluntary payment of trust funds during the course of the preference period established the required nexus between the funds paid and the trust. *See Begier*, 496 U.S. at 67.

Turning first to Virginia Lottery's initial argument that tracing was not required simply because a trust existed, the court finds no merit. As previously stated, although the Supreme Court in *Begier* concluded that a statutory trust existed, it observed that only if the preference defendant had actually been paid with the particular funds held in trust do they "escape characterization as 'property of the debtor.'" *Id.* at 62; s*ee also In re R.W. Leet Elec., Inc.*, 372 B.R. at 853-54; *Lovett v. Homrich Inc. (In re Philip Servs Corp.)*, 359 B.R. 616 (Bankr. S.D. Tex. 2006) (both recognizing that tracing rule is equally applicable to express or statutory trusts). Thus, the mere fact that proceeds from the sale of lottery tickets constituted trust funds is insufficient to protect Virginia Lottery from preference exposure.

Virginia Lottery's second argument, that voluntary payment established the necessary nexus

---

[3] There is a possible exception to this rule if it is demonstrated that the deposited funds were added for the express purpose of restoring the property previously misappropriated. However, the mere fact that a deposit occurred does not raise an inference of an intention to make restitution, unless the commingling and redeposit took place, as in *Cannon,* in a trust account. *See* Restatement (Second) of Trusts § 202 cmt. m (2011); Restatement (First) of Restitution § 212 cmts. a and c (2011); *Bogert's Trusts and Trustees* § 929 (2011); 90A C.J.S. *Trusts* § 740 (2012).

between the trust funds and the payments, requires greater analysis. The basis for this argument is the *Begier* decision by the Supreme Court. In *Begier*, the Court considered whether prepetition payments of withholding and excise taxes to the IRS from the debtor's general operating account could be avoided and recovered as bankruptcy preferences. *Begier*, 496 U.S. at 53. The Court initially concluded that these taxes were statutory trust funds pursuant to a provision of the federal tax code, 26 U.S.C. § 7501, which states that "the amount of [trust-fund] tax . . . collected or withheld shall be held to be a special fund in trust for the United States." *Id.* at 61-62. The Court then turned to the question of whether the IRS was actually paid with the trust funds. *Id.* at 62. Because § 7501 gave no guidance on this issue, the Court looked to common law tracing rules but found them unhelpful since they were designed for a system in which particular property is identified as the trust res. *Id.* at 62-63. By contrast, "[a] § 7501 trust is radically different from the common-law paradigm" because it creates a trust in "an abstract 'amount'–a dollar *figure* not tied to any particular assets–rather than in the actual dollars withheld." *Id.* at 62 (emphasis in original).

Unable to find the answer in the statute or in common law principles, the Supreme Court turned to the legislative history of § 547 and § 541 of the Bankruptcy Code, the latter of which defines property of the estate. The Court noted that prior to the enactment of the Bankruptcy Code in 1978, the Court in *United States v. Randall*, 401 U.S. 513 (1971), had refused to permit a bankruptcy debtor to make postpetition payments of trust fund taxes to the IRS ahead of administrative expenses. Unhappy with this ruling, Congress addressed the issue in the 1978 Code by expressly providing in § 541 that property of the estate would not include property held in trust for another. In a House Report, one Congressman discussed the effects of the new statutory language on the rule established in *Randall*:

> [A] serious problem exists where "trust fund taxes" withheld from others are held to be property of the estate where the withheld amounts are commingled with other assets of the debtor. The courts should permit the use of reasonable assumptions under which the Internal Revenue Service, and other tax authorities can demonstrate that amounts of withheld taxes are still in the possession of the debtor at the commencement of the case.

H.R. Rep. 95-595, at 549 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6500.

The Supreme Court in *Begier* concluded that these same "reasonable assumptions" should

15

apply to prepetition payments of trust-fund taxes to the IRS, but queried how extensive the "required nexus" between the trust and the payments should be. *Id.* at 66. The Court found the answer in the following House Report:

> A payment of withholding taxes constitutes a payment of money held in trust under Internal Revenue Code § 7501(a), and thus will not be a preference because the beneficiary of the trust, the taxing authority, is in a separate class with respect to those taxes, if they have been properly held for payment, as they will have been if the debtor is able to make the payments.

H.R. Rep. 95-595, at 373 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6329.

Based on the foregoing, the Court held that "[t]he debtor's act of voluntarily paying its trust-fund tax obligation therefore is alone sufficient to establish the required nexus between the 'amount' held in trust and the funds paid." *Begier*, 496 U.S. at 66-67. Because the debtor in *Begier* had voluntarily paid its trust-fund tax obligation to the IRS, the Court held that it was unnecessary for the IRS to perform the common-law tracing in order to prevail in the preference action against it. *Id.*

In the present case, Virginia Lottery cites *Begier* for the proposition that maintains that it, too, is not required to trace the wired payments it received to the trust funds, because APPCO voluntarily made the payments, thereby providing the required nexus. This court disagrees. The Supreme Court in *Begier* was focused solely on trust-fund taxes pursuant to § 7501 of the Internal Revenue Code for which common-law tracing principles could not be applied because the trust res as defined by statute was in an abstract dollar "*amount*" rather than specific property, the common-law paradigm. In fact, the court even utilized the phrase "special context" to describe how the issue before it arose. In contrast, the trust res in the present case is not in an abstract "amount." As previously described, the trust res is identified both in the retailer contract and by statute as specific property: proceeds from the sale of lottery tickets and unsold tickets in the retailer's possession. There was simply no indication in *Begier* that the Court was abandoning the traditional tracing rule in contexts outside of § 7501 trusts or for trusts which continue to fit within the common-law paradigm. *See Wyle v. S&S Credit Co. (In re Hamilton Taft & Co.)*, 53 F.3d 285, 290 (9th Cir. 1995), *vacated as moot*, 68 F.3d 337 (1995) (observing that it should not "extend the holding in *Begier* more broadly than is necessary to accomplish its purposes when doing so necessarily undermines the Bankruptcy Code's core principle of equality of distribution among creditors" and

16

that "[i]n the absence of any clear policy reason for extending *Begier*, we apply the common law of trusts"); *United States v. Borock (In re Ruggeri Elec. Contracting, Inc.)*, 214 B.R. 481, 486 n.3 (E.D. Mich. 1997) ("Almost without exception, the Bankruptcy Courts have interpreted the Supreme Court's reasonable assumptions test [in *Begier*] narrowly."); *Official Comm. of Unsecured Creditors v. Catholic Diocese of Wilmington, Inc. (In re Catholic Diocese of Wilmington, Inc.)*, 432 B.R. 135, 156, 151 (Bankr. D. Del. 2010) ("The *Begier* Court deviated from the common law tracing rules not because it found them lacking" but "due to the unique facts and circumstances raised by the specific type of trust at issue in the case. As such, the holding in *Begier* should be narrowly construed and the nexus test should only apply in cases where a court is faced with facts similar to those in *Begier*."); *Johnson v. Barnhill (In re Antweil)*, 154 B.R. 982, 987 (Bankr. D.N.M. 1993) ("*Begier* deals with a unique type of situation, a trust created for the benefit of the Internal Revenue Service.").

Consistent with this conclusion, courts have generally continued to require common-law tracing for alleged trust payments outside the trust-fund tax context.[4] *See, e.g., Stoebner v. Consumers Energy Co. (In re LGI Energy Solutions, Inc.)*, 460 B.R. 720, 726 (B.A.P. 8th Cir. 2011) (utilities who had received payments from general account of debtors who provided utility management and billing services had to establish trust relation and trace funds to prevail in preference action); *In re R.W. Leet Elec., Inc.*, 372 B.R. at 855 (prepetition payments from debtor's commingled account subject to avoidance absent tracing of funds held in statutory trust under state contractors act); *Daly v. Radulesco (In re Carrozzella & Richardson)*, 247 B.R. 595, 601 (B.A.P. 2nd Cir. 2000) (preference defendant had burden of tracing their payments to express trust res); *In

---

[4] Most courts have limited *Begier* exclusively to § 7501 trust fund taxes, although a few, including the Third Circuit Court of Appeals, have extended its holding to other types of trust-fund taxes. *See, e.g., City of Farrell v. Sharon Steel Corp.*, 41 F.3d at 98-99 (finding no significant distinction between § 7501 trust for federal withholding tax and trust created under Pennsylvania law for local income taxes, the court concluded that common law tracing rules did not apply). This extension has been based in part on the language in *Begier* quoted from the House Report stating: "The courts should permit the use of reasonable assumptions under which the Internal Revenue Service, *and other tax authorities*, can demonstrate that amounts of withheld taxes are still in the possession of the debtor at the commencement of the case." *Begier*, 496 U.S. at 65 (quoting H.R. Rep. 95-595, at 549 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6500) (emphasis supplied).

*re Catholic Diocese of Wilmington, Inc.*, 432 B.R. at 158 (alleged beneficiaries of resulting trust bore burden of identifying and tracing trust funds if they have been commingled with non-trust funds in non-trust account); *In re Philip Services Corp.,* 359 B.R. at 628 (requiring tracing for commingled express trust funds under state contractor act); *but see In re Suwannee Swifty Stores, Inc.*, 266 B.R. at 552-53 (tracing not required under *Begier* to protect from avoidance under § 549 of the Bankruptcy Code unauthorized postpetition transfers by the debtor to the Georgia Lottery Corporation); *EBS Pension L.L.C. v. Edison Bros. Stores, Inc. (In re Edison Bros, Inc.)*, 243 B.R. 231, 240 (Bankr. D. Del. 2000) (concluding that although *Begier* dealt with taxes, its holding applied equally to all constructive trust cases under § 541(d)).

Because *Begier* is not applicable to the case at hand, it is necessary for Virginia Lottery to trace the payments it received from APPCO's commingled bank account to the trust funds collected on Virginia Lottery's behalf. As discussed in *Leet Electric*, although a party seeking to avoid a preference has the burden of establishing all of the elements of a preference under § 547(b), *see* 11 U.S.C. § 547(g), APPCO met this burden by the fact that Virginia Lottery was paid from APPCO's general account. *See In re R.W. Leet Elec., Inc.*, 372 B.R. at 855-57. Faced with APPCO's properly supported request for partial summary judgment on the question of whether Virginia Lottery was paid with property of the debtor, it was incumbent on Virginia Lottery to come forward with evidence demonstrating the required tracing or otherwise suggesting that there is a genuine issue of material fact on this issue. *Id.* at 856 (citing, *inter alia, In re Carrozzella & Richardson*, 247 B.R. at 602 (once the trustee establishes that the creditor was paid from the debtor's commingled general account, the burden shifted to creditor to prove that debtor only had legal title and to trace its interest in the commingled funds)). No attempt has been made by Virginia Lottery to do either.

APPCO maintains that tracing is impossible and sets forth as one of its statements of undisputed material fact that "[t]here is no way to determine whether or not the Wire Transfers were funds representing lottery ticket proceeds." Virginia Lottery disputes the statement, stating that it represents a legal conclusion. Nonetheless, the statement is consistent with the deposition testimony of Bill Lockhart, Virginia Lottery's investments and cash operations manager, who "generally speaking" agreed with the statement that "there is really no way to determine whether or not the proceeds from which APPCO paid the Lottery with the wire transfers were lottery-ticket proceeds

or not."

Regardless of the accuracy of the foregoing statement, the fact remains that Virginia Lottery has failed to demonstrate by tracing that the wired payments from APPCO's general account were trust funds. Accordingly, APPCO is entitled to partial summary judgment on its claim that the wired payments were property of the debtor, and Virginia Lottery's motion on this issue must be overruled.

IV.

In summary, the court concludes that the eight EFT payments totaling $271,987.53 made by APPCO to Virginia Lottery during the 90 days prior to APPCO's bankruptcy filing were trust fund property rather than property of the debtor. Accordingly, Virginia Lottery is entitled to summary judgment in its favor as to APPCO's claim that these payments represent avoidable preferences under 11 U.S.C. § 547(b). Regarding the five wired payments totaling $213,182.79 made by APPCO to Virginia Lottery, the court concludes that these payments were property of the debtor APPCO. Therefore, APPCO will be granted partial summary judgment on these claims, and Virginia Lottery's motion for summary judgment will be denied. The court will enter an order consistent with this ruling.

# # #